Charles Robert THOMAS, a minor By and Through his next friend and mother, Terry THOMAS, and Dennis Thomas and Terry Thomas, individually, Appellants (Plaintiffs),

v.

SOUTH CHEYENNE WATER AND SEWER DISTRICT, Appellee (Defendant),

Tel, Inc., a Wyoming corporation, (Defendant).

No. 84–153.

Supreme Court of Wyoming.

July 15, 1985.

Larry Lawton of Lawton, Edwards & Johnson, Cheyenne, for appellants.

John C. Brooks and John I. Henley (argued), of Vlastos, Reeves, Murdock & Brooks, P.C., Casper, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from a summary judgment granted South Cheyenne Water and Sewer District. We affirm.

Appellant raises a single issue:

"Is it error to grant summary judgment for a defendant when expert testimony establishes a standard for the area, and that the defendant has violated that standard?"

We have frequently reiterated our standard of review of summary judgments. " 'When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.' *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147, 150 (1981). See also, *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334, 336 (1983).

"A summary judgment should only be granted where it is clear that there are no issues of material facts involved and that an inquiry into the facts is unnecessary to clarify the application of law. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). A material fact is one which has legal significance. *Johnson v. Soulis*, supra. It is a fact which would establish a defense. *Wood v. Trenchard*, Wyo., 550 P.2d 490 (1976). After the movant establishes a prima facie case the burden of proof shifts to the opposing party who must show a genuine issue of material fact, *Gennings v. First Nat'l Bank of Thermopolis*, Wyo., 654 P.2d 154 (1982), or come forward with competent evidence of specific facts countering the facts presented by the movant. *Matter of Estate of Brosius*, Wyo., 683 P.2d 663 (1984). The burden is then on the non-moving party to show specific facts as opposed to general allegations. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2727, p. 538. The material presented must be admissible evidence at trial. Conclusory statements are not admissible. *Bancroft v. Jaqusch*, Wyo., 611 P.2d 819 (1980). We give the party defending the motion the benefit of any reasonable doubt." *Roth v. First Security Bank of Rock Springs, Wyoming*, Wyo., 684 P.2d 93, 95 (1984).

For purposes of summary judgment, the pleadings, depositions, affidavits and exhibits established the following undisputed facts: Appellant Charles Thomas was being cared for by a neighbor. He was playing outdoors with two boys. One of the boys suggested they go to a water meter vault located on the property of a nearby ceramics shop because he had left a toy there. A meter vault is an excavation containing a meter sufficiently deep in the ground to prevent freezing. It is covered by a door hinged on one side that can be raised to read the meter, but is otherwise closed. The meter vault and cover were purchased, paid for, and installed by Tel, Inc. on land owned by Tel, Inc.

Appellant raised the cover and entered the meter vault. As he was climbing out, the vault door fell upon his hand causing amputation of two fingers. Appellant, his mother and stepfather sued Tel, Inc., the owner of the property, and South Cheyenne Water and Sewer District (hereinafter District) claiming that the open water meter vault was an attractive nuisance, that the appellees were negligent in the supervision and maintenance of the meter vault, and that damages—including punitive damages—ought to be awarded. The court granted summary judgment in favor of the District, on the grounds that the doctrine of attractive nuisance was not applicable

because the District had no right of control nor attempted to exercise control over the meter vault in question, and that the District did not owe a duty to appellant and, therefore, could not be negligent. Appellant abandoned his reliance upon the attractive nuisance doctrine in this appeal, we suspect, because the District was not a possessor of the land upon which the meter vault was located. The Restatement, Second, Torts, requires for liability to attach that the person charged be "a possessor of land." It was undisputed that appellee's situation did not satisfy this requirement.[1]

Appellant settled with defendant Tel, Inc., and that claim was dismissed with prejudice. Appellant then appealed from the summary judgment granted appellee. Appellant based the appeal solely on the question of the applicability of Rule 704, W.R.E., to a summary judgment.

Appellant contends that his expert's affidavit precluded summary judgment on the basis of Rule 704, W.R.E., which provides that:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The affidavit by Lawrence E. Carlson, a doctor of engineering, stated that the meter vault cover was most likely used for aerospace application; that it was not appropriate as a cover in this case; and that it would be

"inconvenient, if not difficult, for a meter reader to operate and is not standard. It was most likely *not* latched shut after

routine meter readings." (Emphasis in original.)

He also stated that meter vault covers are "commonly specified by the water district." He stated that Boulder, Colorado provides covers to their customers and that Denver, Colorado requires one of several different types to be used. He stated that the meter vault cover in this case was totally inappropriate for its use and was unreasonably dangerous.

An affidavit by the attorney for appellant stated

"[t]hat the undersigned verily believes that the depositions of the directors of water services in southeast Wyoming will establish the standard of care set out above, and the violation of said standard of care by the Defendant South Cheyenne Water and Sewer District."

Depositions of these directors were not taken. The District does not design, supply, manufacture, specify, or furnish requirements for meter vault covers. The District contends it has no duty to design or require a particular type of cover. Appellant contends that a duty should be imposed upon the District to design, specify, maintain, and supervise the meter vaults.

In support of the motion for summary judgment, appellee District filed an affidavit of Floydine Gay, a secretary for the District, which stated that the business records reflected all visits by District personnel to the meter involved. It was read by meter reader Tracy Long on April 15, 1982 and again on May 10, 1982. No other District personnel were at the vault during

---

1. Restatement, Second, Torts § 339, states:
"A possessor land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

the interim. She further stated that the meter vault

"is owned by and under the exclusive control of the water user or property owner, and is on land owned by persons or entities other than the District."

She also stated that the *only* interest of the District is that the meter vaults be frostproof and accessible for periodic readings. The meter pits are constructed and installed by persons over which the District has "no right of control, nor attempts to exercise any control."

The affidavit by Tracy Long, a meter reader, corroborated the affidavit of Ms. Gay, stating that on April 15, 1982, he took a reading of the meter, opened the cover, recorded the numbers on the meter and closed the lid. He states further that he had returned to the meter pit on May 10, 1982, and that to his knowledge no readings were taken by personnel during the interim period of time.

Appellant contends that his expert's affidavit established the dangerousness of this vault cover, particularly when this conclusion was supported by a detailed description of the object showing the items of danger.[2] Looking at the evidence in a light most favorable to appellant, we accept the testimony that the meter vault cover was heavy and cumbersome; that it was "total-ly inappropriate" for its use; and that it was "unreasonaly dangerous."

The case of *Merit Motors, Inc v. Chrysler Corp.*, 569 F.2d 666 (D.C.Cir.1977), is pertinent. Although that case involves Rule 703[3] rather than 704, F.R.E., the underlying rationale is applicable to the present case.

"On appeal appellants attempt to salvage their expert's opinion by relying on cases applying Rule 703 of the Federal Rules of Evidence, adopted in 1975. This rule was intended to broaden the acceptable bases of expert opinion, *but it was not intended,* as appellants seem to argue, *to make summary judgment impossible whenever a party has produced an expert to support its position.* Even Rule 703 requires that the grounds relied on by an expert must be 'a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" (Footnotes omitted.) (Emphasis added.) *Id.* at 672–673.

■ To hold that Rule 704, W.R.E., prevents a court from granting summary judgment merely because of an expert's conclusion that has no basis in or out of record would seriously undermine the policies of Rule 56, W.R.C.P. Rule 704 allows testimony on ultimate issues, Louisell & Mueller, Federal Evidence § 395, but that

---

2. The affidavit stated in part:

"2. The meter pit cover was manufactured by Huntley Tool & Machine Co., Seattle, Washington for the Boeing Company on a proprietary basis. It was most likely for an aerospace application and not appropriate as a water meter pit cover.
"3. The cover is made of cast steel and weighs approximately 80 pounds.
"4. A standard meter pit cover weighs approximately 30 pounds.
"5. The cover opens to approximately 21° past top dead center at its fully opened position.
"6. From its fully opened position, only about 16 pounds are necessary to cause it to close.
"7. When it closes from top dead center, it will slam shut with at least 400 pounds effective force.
"8. The means to latch the cover closed is a square nut on a 5/8–11 UNC threaded clevis. This would be inconvenient, if not difficult, for a meter reader to operate and is not standard. It was most likely *not* latched shut after routine meter readings.
"9. Meter pit covers are commonly specified by the water district. Boulder, Colorado, provides them to customers. Denver, Colorado, requires one of several approved types, one of which was in the adjacent lot in South Cheyenne.
"10. The Defendant's meter pit cover was, in my opinion, totally inappropriate for its use and unreasonably dangerous." (Emphasis in original.)

3. Rule 703, F.R.E., provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

statement of law does not resolve the question. The standards of Boulder and Denver do not mandate a conclusion that Cheyenne does or should meet similar standards. There was no evidence of what national standards are nor what a majority of water districts require. In the absence of competent evidence, we cannot find the District negligent. The affidavit did not establish a standard in the industry or set out what duty was imposed on the District. A bare conclusion as to duty, stating no reasonable basis therefor, is not sufficient to prevent entry of summary judgment. See, *Kimbley v. City of Green River*, Wyo., 663 P.2d 871 (1983); *Hunter v. Farmers Insurance Group*, Wyo., 554 P.2d 1239 (1976).

The trial court stated in the decision letter:

"Material presented to the Court by way of affidavit and summary judgment proceedings should be such as would be admissible in evidence at the time of trial. *Keller v. Anderson*, 554 P.2d 1253 (Wyo.1976). Certainly the bald assertion contained in paragraph 5 of Mr. Lawton's deposition does not suffice. The arguments, the evidentiary submissions, and the memorandums all fail to show *any statutory authority, regulatory authority, custom, or actual authority* relied upon by the district to regulate, control, or supervise the installation of the vault door and vault. Further, no authority is submitted for the proposition that such duty in fact exists. Liability must be based upon duty. *Medlock v. Van Wagner*, 625 P.2d 207, 208 (Wyo. 1981). That a water district customer may obtain a meter cover from a water district at Boulder, Colorado, and that a water district in Denver, Colorado, requires a cover of an approved type, is not in the view of this Court evidence that a duty has been established and may be imposed upon the South Cheyenne Water and Sewer District to do the same." (Emphasis added.)

We agree totally with this analysis.

■ The elements of negligence are: (1) a duty, (2) a violation of that duty (3) which is the proximate cause of (4) injury to the plaintiff. *Beard v. Brown*, Wyo., 616 P.2d 726 (1980). The determination of duty is a question of law not within the province of a jury. *Medlock v. Van Wagner*, Wyo., 625 P.2d 207 (1981). The court must decide

" '[w]hether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court.' Prosser, Law of Torts, § 37, p. 206 (4th Ed.1971)." *Caterpillar Tractor Company v. Donahue*, Wyo., 674 P.2d 1276, 1280 (1983).

If duty has not been established, there is no actionable negligence. *Norman v. City of Gillette*, Wyo., 658 P.2d 697 (1983); *Medlock v. Van Wagner*, supra; *Turney v. Sullivan*, 89 Nev. 554, 516 P.2d 738 (1973).

The case of *Salazar v. City of Sheridan*, 44 Colo.App. 443, 618 P.2d 708 (1980), presented a similar factual situation. Appellant's children had been playing in Chase Park in the City of Sheridan, approximately one hundred yards from an entrance to a storm sewer culvert. The children entered the sewer through bars which had apparently been bent. One of the children lit a match and gas exploded resulting in injuries. The children's parents brought suit alleging liability on the part of the City of Sheridan contending that Sheridan negligently maintained Chase Park in too close of proximity to the storm sewer, that they maintained an attractive nuisance, or were negligent in failing to take reasonable precautions to prevent the entry of children into the sewer. Although the decision held that the City had a duty arising from a contractual acceptance of the responsibility for maintenance—which is not a considera-

tion in the present case—the case also stated that:

"We see no basis for imposing liability on Sheridan based on the existence of Chase Park. The park was owned, controlled, operated, and maintained by defendant South Suburban Metropolitan Recreation and Park District, and there was no showing that Sheridan had any responsibility or duty in connection therewith." *Id.* at 710.

In the absence of these elements, we cannot find a duty. See, *Norman v. City of Gillette*, supra.

The uncontroverted evidence showed that the District did not own, control, possess, maintain, or attempt to exercise any control over the meter vault. Testimony that two cities in Colorado exercise control over meters is not sufficient to establish a duty generally applicable. The expert's affidavit did not establish the standard of care in the industry or in Wyoming; it stated only what was being done in two Colorado cities; the affidavit did not present fact or opinion sufficient to establish a duty owed by the District to appellant. Under these circumstances, the district court correctly found that a duty was not owed as a matter of law; and summary judgment was properly entered.

Affirmed.