[No. 14551-4-III.   Division Three.   October 24, 1995.]

PAUL SHIELDS, ET AL., *Appellants*, v. STA-FIT, INC., ET AL., *Respondents*.

*Keith S. Douglass* (of *Kaiser & Douglass*) and *George M. Ahrend* (of *Layman & Layman*), for appellants.

*Jonathan C. Rascoff* and *Rascoff & Kelly*, for respondents.

SWEENEY, A.C.J. — ██ Generally exculpatory clauses are valid unless they violate a public policy interest of this state.[1] As a condition of joining Sta-Fit Club East, Paul Shields was required to release Sta-Fit and its em-

---

[1] *Scott v. Pacific W. Mountain Resort*, 119 Wn.2d 484, 492, 834 P.2d 6 (1992); *Liberty Furniture, Inc. v. Sonitrol of Spokane, Inc.*, 53 Wn. App. 879, 880-81, 770 P.2d 1086 (exculpatory clauses enforceable unless violate public policy, the negligent act falls greatly below the standard established or inconspicuous), *review denied*, 113 Wn.2d 1005 (1989).

ployees from any negligence or fault. He was injured when a Sta-Fit employee, a trainer, instructed him to remove his support belt while performing squats. He had paid an extra $10-per-hour fee to the trainer for advice and instruction. We are asked to decide whether public policy considerations should preclude enforcement of the hold harmless agreement. Applying the rationale outlined by our supreme court in *Wagenblast v. Odessa Sch. Dist. 105-157-166J*,[2] we conclude that they should not and affirm the trial court's summary dismissal.

The standard of review for summary judgment is well settled and need not be repeated here. The question presented is one of law.[3] We begin by noting that there is generally no public policy which prevents parties from releasing one or the other from liability for negligence.[4]

In *Wagenblast*, however, our supreme court created a public policy exception to this general rule. There, the court answered the question whether school districts could require public school students to release the district from negligent conduct before they would be allowed to participate in interscholastic athletics. It recognized the validity of hold harmless agreements, but concluded that there are instances when public policy concerns outweigh the freedom to contract.[5] Although *Wagenblast* addressed the validity of hold harmless agreements in the context of interscholastic activities at a public school, the principles discussed are equally applicable to the facts here. And both parties have, accordingly, argued the *Wagenblast* factors.

■ The *Wagenblast* court set out a series of six considerations to determine whether a hold harmless agreement

---

[2]110 Wn.2d 845, 758 P.2d 968, 85 A.L.R.4th 331 (1988).

[3]*Scott*, 119 Wn.2d at 490 ("[t]he sufficiency of the language to effect a release is generally a question of law").

[4]*Wagenblast*, 110 Wn.2d at 848 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 482 (5th ed. 1984)).

[5]*Wagenblast*, 110 Wn.2d at 849-50.

violates public policy.[6] These considerations do not provide a fixed formula necessarily leading to the conclusion that a given exculpatory agreement does or does not violate public policy. The court noted, however, that "the more of the foregoing six characteristics that appear in a given exculpatory agreement case, the more likely the agreement is to be declared invalid on public policy grounds."[7]

Factors (*Wagenblast* refers to them as characteristics) considered by the court are whether: (1) the agreement concerns a business of a type generally thought suitable for public regulation; (2) the person seeking exculpation is engaged in a service which is of great importance to the public, which is often a matter of practical necessity for some members of the public; (3) the party seeking exculpation holds himself or herself out as willing to perform this service for any member of the public seeking it, or at least any member of the public coming within certain established standards; (4) because of the essential nature of the service, the party seeking exculpation possesses a decisive advantage of bargaining strength against members of the public seeking the service; (5) in exercising superior bargaining power the party seeking exculpation confronts the public with a standardized adhesion contract of exculpation and makes no provision for the purchaser to pay additional reasonable fees and obtain protection against negligence; and (6) the person or property of the public purchaser seeking such services is placed under the control of the seller or his or her agents.[8]

We apply each of the *Wagenblast* factors to the facts here, in order.

Public Regulation. Mr. Shields points to the Health Studio Services Act (RCW 19.142) and argues that the health club industry is one which is the subject of public

---

[6]*Wagenblast*, 110 Wn.2d at 851-52 (quoting *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 98-101, 383 P.2d 441, 32 Cal. Rptr. 33, 6 A.L.R.3d 693 (1963)).

[7]*Wagenblast*, 110 Wn.2d at 852.

[8]*Wagenblast*, 110 Wn.2d at 851-52 (citing *Tunkl*, 60 Cal. 2d at 98-101); *Boyce v. West*, 71 Wn. App. 657, 663-64, 862 P.2d 592 (1993).

regulation. He uses these regulations to distinguish other cases involving activities in which exculpatory agreements were upheld.[9] The flaw in this argument lies in the nature of the regulatory scheme for health clubs. That scheme has nothing to do with the way in which a health club services its customers' individual physical fitness needs, exercise regimens or safety needs. The regulatory scheme focuses rather on the financial aspects of membership: membership plans, special offers and misrepresentations;[10] contents of membership contracts;[11] and the buyer's right on cancellation.[12] It prohibits misrepresentations to prospective buyers concerning the qualifications of the staff.[13] It does not, however, impose safety regulations or require that employees be licensed or even well-trained. Nor does it authorize any administrative agency to regulate the health club industry.

In contrast, regulations at issue in *Wagenblast* did focus on issues of safety and health. The Washington Interscholastic Activities Association extensively regulated interscholastic athletics, including turnout schedules and regular season game limitations. The regulations at issue in *Wagenblast* touched the essence of the activity. That is not the case with the Health Studio Services Act.

Service of Great Importance to the Public. On this issue, Mr. Shields argues that because membership in a health club has important medical and health benefits, it is of great importance to the public as that concept is expressed in the second *Wagenblast* factor. We disagree. Membership in a health club is certainly beneficial. It is

---

[9]*Scott* (snow skiing); *Boyce* (scuba diving); *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 728 P.2d 617 (1986) (automobile demolition derby).

[10]RCW 19.142.020 (health studios shall prepare list of all membership plans offered; special discount offers must be made in writing; prohibited from misrepresenting results obtained through exercise).

[11]RCW 19.142.040 (contract for health studio services must be in writing; contents of contract).

[12]RCW 19.142.050 (notice of cancellation; refunds to buyer).

[13]RCW 19.142.020(4).

probably a good idea for citizens of this state to exercise. But that is a far cry from declaring health clubs an indispensable necessity as a matter of public policy.

A common thread runs through those cases in which exculpatory agreements have been found to be void as against public policy. That common thread is they are all essential public services—hospitals,[14] housing,[15] public utilities,[16] and public education.[17]

Health clubs are a good idea and no doubt contribute to the health of the individual participants and the community at large. But ultimately they are not essential to the welfare of the state or its citizens. And any analogy to schools, hospitals, housing (public or private) and public utilities therefore fails. Health clubs do not provide essential services.

Willing To Perform Services for Public. Sta-Fit concedes that its facilities serve a broad section of the community and that membership is available to all persons who comply with the conditions imposed by Sta-Fit.

Bargaining Advantage. Mr. Shields argues that Sta-Fit has more bargaining power than any of its members and that power is further enhanced by its market share in the Spokane area. It operates five health studios in Spokane. Both propositions may be true. But the argument again overlooks what we perceive to be the role of health clubs in general and this one in particular. *Wagenblast* is again instructive.

There, the court held that interscholastic athletic programs were of considerable importance and, in most instances, there were no alternative programs. When alternatives existed, they "possess[ed] little of the inher-

[14]*See Wagenblast*, 110 Wn.2d at 854 n.23 (citing *Tunkl*, 60 Cal. 2d at 102).

[15]*McCutcheon v. United Homes Corp.*, 79 Wn.2d 443, 486 P.2d 1093 (1971); *Thomas v. Housing Auth.*, 71 Wn.2d 69, 426 P.2d 836 (1967).

[16]*Reeder v. Western Gas & Power Co.*, 42 Wn.2d 542, 256 P.2d 825 (1953).

[17]*Wagenblast*.

ent allure of interscholastic competition."[18] Schools hold a monopoly power; private programs do not. This fourth *Wagenblast* factor is thus tied to consideration of the second. As noted by the court in *Wagenblast*,[19] the focus is on whether the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services "[a]s a result of *the essential nature of the service*, in the economic setting of the transaction . . . ." (Emphasis added.)

Again, as we have noted, health studios are not essential. People interested in weight lifting clearly do not need to be Sta-Fit members. Other competing clubs and organizations, both public and private, are available. A person could buy his or her own set of weights, stairmaster, indoor bicycling machine, treadmill, Nordic Trak, etc.

Standardized Adhesion Contract. The contract is clearly one of adhesion. But again the true concern is the disparate bargaining power. And that in turn is related to the essential nature of the services being provided. As we have discussed, the services are not essential and the bargaining power therefore is not so disparate as to trigger the application of this *Wagenblast* factor.

Control. Mr. Shields emphasizes the control exerted by Sta-Fit and its trainer. Once Mr. Shields bought his membership and paid the extra fee, he was certainly within the control of Sta-Fit and its employee. The argument is valid insofar as it goes, but it ignores the reality that Mr. Shields voluntarily submitted to that control. This is not like the school, the hospital, housing or other necessary public services. As we have noted, other options were available, the most important of which was not to join in the first place. Mr. Shields could have done something else to further his physical fitness. With other public services, however, choices are limited.

Mr. Shields attempts to distinguish a line of cases

---

[18]*Wagenblast*, 110 Wn.2d at 855.

[19]110 Wn.2d at 851 (quoting *Tunkl*, 60 Cal. 2d. at 100).

upholding hold harmless agreements.[20] While we agree that once he signs up and begins the program he has the right to rely on the expertise of the trainer, and could justifiably be expected to do so, that relationship is voluntarily assumed. And again that is distinguishable from those cases in which the relationship is to a greater or lesser degree not voluntarily assumed, i.e., housing, hospital services, and public utilities.

Finally, as the court noted in *Wagenblast*, this factor alone is not dispositive.[21] It must be weighed with others. And when that is done, public policy does not militate against enforcement of this contract.

The decision of the trial court is affirmed.

MUNSON and SCHULTHEIS, JJ., concur.

Reconsideration denied November 22, 1995.

Review denied at 129 Wn.2d 1002 (1996).

[Nos. 12870-9-III; Division Three. October 26, 1995.] 14226-4-III.

---

[20]*Randas v. YMCA*, 17 Cal. App. 4th 158, 21 Cal. Rptr. 2d 245 (1993) (exculpatory agreement enforced against swimmer who fell on wet pool-side tile despite assertions she did not read agreement); *Garrison v. Combined Fitness Ctr. Ltd.*, 201 Ill. App. 3d 581, 559 N.E.2d 187 (1990) (court enforces exculpatory agreement in favor of health studio because design of weight lifting bench beyond control of health studio); *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111 (Tex. App. 1991) (health studio's negligent instruction did not lead to decedent's heart attack).

[21]*Wagenblast*, 110 Wn.2d at 852.