James MASSENGILL and Kaylea
Massengill, Appellants
(Plaintiffs),

v.

S.M.A.R.T. SPORTS MEDICINE CLINIC,
P.C., Appellee (Defendant).

No. 98–150.

Supreme Court of Wyoming.

Feb. 14, 2000.

Representing Appellants: Robert A.
Hampe, Cheyenne, Wyoming (Withdrew pursuant to an Order of Suspension Upon Consent entered in the Wyoming Supreme Court
on June 18, 1999.).

Representing Appellee: John I. Henley of
Vlastos, Brooks, Henley & Drell, P.C., Casper, Wyoming.

Before LEHMAN, C.J., and THOMAS,
MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The only issue in this case is whether a
waiver of liability in a contract between
S.M.A.R.T. Sports Medicine Clinic, P.C.
(S.M.A.R.T.) and James Massengill (Massengill) is enforceable under the standards
adopted in *Schutkowski v. Carey,* 725 P.2d
1057 (Wyo.1986) and followed in later cases.
Massengill was using a lat-pull-down machine
at S.M.A.R.T. when a pin used to secure the
weights fell out. Apparently the pin did not
fit properly in the machine, and when the pin
fell out, Massengill fell over backwards injuring his wrist. In various statements of the

* Retired November 2, 1998.

issues, Massengill attacks the validity of the waiver of liability on the grounds that it violated public policy; the business of S.M.A.R.T. is suitable for public regulation; the use of the premises at the time of injury by Massengill is not material; the question of duty is one that must be determined by a trier of fact; and S.M.A.R.T. owed a statutory duty to Massengill which invalidates the waiver. Our review of the record and legal precedent in Wyoming persuades us that the district court ruled correctly that there is no genuine issue of material fact in this case, and S.M.A.R.T. is entitled to judgment as a matter of law. The Order Granting Defendant's Motion for Summary Judgment is affirmed.

In the Appellants' Supreme Court Brief, filed on behalf of James Massengill and Kaylea Massengill (collectively the Massengills), these issues are stated:

Issue I

Did the district court error [sic] in validating the "waiver of liability" in the "sports specific training and advanced rehab agreement and release["] due to the fact that:

(A) The release violated public policy,

(B) The business operated by appellee is suitable for public regulation, and

(C) Plaintiff J. Massengill was engaged in non therapeutic activities on the premises of the medical clinic has no bearing on whether the release should be validated or not?

Issue II

Is the duty issue in this case purely a question of law where the basic facts are undisputed or is the duty issue one which can only be determined by the trier of fact?

Issue III

Did appellee owe a statutory duty of care to appellant which would invalidate the waiver incorporated in the sports specific training and advanced rehabilitation agreement & release?

In the Brief of Appellee S.M.A.R.T. Sports Medicine Clinic, P.C., the issues are stated in this way:

Was the waiver of liability executed by the Appellants valid[?]

(i) Was the Appellee's waiver language inclusive and unambiguous as required by prior Wyoming Supreme Court case law; [or]

(ii) Is the waiver language of the Appellee contrary to public policy[?]

One evening James Massengill engaged in a conversation at a Cheyenne drugstore with the equity owner of S.M.A.R.T., a physician in Cheyenne. Massengill knew that S.M.A.R.T. had a weight room, and had seen recent advertisements to the effect that the facility offered personal trainers to assist members. In the course of a brief conversation, Massengill mentioned his interest in S.M.A.R.T.'s facilities, and the physician suggested he come over and try it out. A month or two following the conversation, Massengill went to S.M.A.R.T. and toured the facilities. The purpose of his initial visit was to assure himself that the equipment met his need, which was to get in better condition.

After he had been shown the facilities and the equipment, Massengill was given a Sports Specific Training and Advanced Rehabilitation Agreement and Release (Agreement and Release) to take home and review. Three days later, both Massengill and his wife executed the Agreement and Release, and they began using the facilities. Massengill was present at S.M.A.R.T. almost every day, and he had been using the lat-pull-down machine for nearly a month prior to his injury. He had not asked any questions about using the machine because he had used one previously. On March 13, 1996, Massengill was warming up on the machine, and he noticed that the pin holding the weights was shaped like a "T" rather than the longer "I" usually used. When Massengill pulled the bar down, the pin holding the weights popped out, and he fell over backwards, hitting his left hand and injuring his wrist.

On May 29, 1997, the Massengills filed their Complaint for Negligence and Damages. The first count of the Complaint for Negligence and Damages was couched in terms of alleged negligence causing injury to James Massengill, and the second count was couched in terms of recovery by Kaylea Mas-

sengill for loss of consortium based upon her husband's injuries. Various procedural steps, including discovery, followed the Answer by S.M.A.R.T., which included the affirmative defense of waiver and the affirmative defense that Kaylea Massengill's claims were derivative of James Massengill's claim. On October 3, 1997, there was filed by facsimile a Defendant's Motion for Summary Judgment accompanied by a Memorandum in Support of Defendant's Motion for Summary Judgment. Additional procedural steps ensued, and on February 2, 1998, the district court entered an Order Granting Defendant's Motion for Summary Judgment.

The district court ruled that the exculpatory clause, including the release and waiver, was not ambiguous and was enforceable. Since the premise for the grant of the summary judgment by the district court was the language contained in the Agreement and Release, the district court ruled implicitly that any other issues of fact, genuine or not, were not material. The Massengills have appealed from the Order Granting Defendant's Motion for Summary Judgment.

In *Mercado v. Trujillo*, 980 P.2d 824, 825–26 (Wyo.1999), we summarized our rules with respect to review of summary judgments:

> " 'When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.' " *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147, 150 (1981). See

also, *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334, 336 (1983).

> "A summary judgment should only be granted where it is clear that there are no issues of material facts involved and that an inquiry into the facts is unnecessary to clarify the application of law. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). A material fact is one which has legal significance. *Johnson v. Soulis*, supra. It is a fact which would establish a defense. *Wood v. Trenchard*, Wyo.[,] 550 P.2d 490 (1976). After the movant establishes a prima facie case the burden of proof shifts to the opposing party who must show a genuine issue of material fact, *Gennings v. First Nat'l Bank of Thermopolis*, Wyo., 654 P.2d 154 (1982), or come forward with competent evidence of specific facts countering the facts presented by the movant. *Matter of the Estate of Brosius*, Wyo., 683 P.2d 663 (1984). The burden is then on the nonmoving party to show specific facts as opposed to general allegations. 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2727, p. 538. The material presented must be admissible evidence at trial. Conclusory statements are not admissible. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980). We give the party defending the motion the benefit of any reasonable doubt." *Roth v. First Security Bank of Rock Springs, Wyoming*, Wyo., 684 P.2d 93, 95 (1984). *Nowotny v. L & B Contract Industries*, 933 P.2d 452, 455 (Wyo.1997) (quoting *Thomas by Thomas v. South Cheyenne Water and Sewer Dist.*, 702 P.2d 1303, 1304 (Wyo.1985)).

■ More specifically and succinctly, with respect to this case, when review is sought of a summary judgment this Court must determine that there is no genuine issue of a material fact and the party prevailing in the district court is entitled to judgment as a matter of law. Utilization of summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. In accomplishing the review of a summary judgment resting upon a question

of law, our review is *de novo* and affords no deference to the district court's ruling on that question. *E.g., Roberts v. Klinkosh,* 986 P.2d 153, 156 (Wyo.1999); *Gray v. Norwest Bank Wyoming, N.A.,* 984 P.2d 1088, 1091 (Wyo.1999); *Ahrenholtz v. Time Ins. Co.,* 968 P.2d 946, 949 (Wyo.1998).

Our reading of the Agreement and Release convinces us that the intention of S.M.A.R.T. and the Massengills is expressed in clear and unequivocal language. The language clearly assigns the risk to members who agree to be liable for any and all risks. The Agreement and Release continues with an unequivocal statement that S.M.A.R.T. shall not be liable for any injuries or damages to any member or the member's property, including those caused by the negligence of S.M.A.R.T. It continues with this language:

1. Any member using S.M.A.R.T. SPORTS facility shall undertake any and all risks. The member shall also be liable for any and all risks. S.M.A.R.T. SPORTS shall not be liable for any injuries or damage to any member, or the property of the member, or be subject to any claim, demand, injury or damages whatsoever, including, without limitation, those damages resulting from acts of negligence on the part of S.M.A.R.T. SPORTS, its officers or agents. The member, for himself/herself and on behalf of his/her executors, administrators, heirs, assigns, and assignees and successors, does hereby expressly forever waive, release and discharge S.M.A.R.T. SPORTS, its owners, officers, employees, agents, assigners and successors from all such claims, demands, injuries, damages, actions or causes of action.

The language of the Agreement and Release is broad, and specifically releases S.M.A.R.T. from claims and actions for negligence. Indeed, the Massengills do not assert that the agreement does not apply to this action; instead, their contention is that the agreement is not enforceable. In the absence of any genuine issue of a material fact with respect to the language of the Agreement and Release, the issue is a pure question of law with respect to whether the district court invoked and correctly applied the pertinent rules of law.

In *Shepard v. Top Hat Land & Cattle Co.,* 560 P.2d 730, 732 (Wyo.1977), the applicable rule was summarized:

If the language of the contract is plain and unequivocal that language is controlling and the interpretation of the contractual provisions is for the court to make as a matter of law. The meaning of the instrument is to be deduced only from its language if the terms are plain and unambiguous. *Mauch v. Ballou,* Wyo., 499 P.2d 591 (1972); *Craig v. Gudim,* Wyo., 488 P.2d 316 (1971); *Chandler–Simpson, Inc. v. Gorrell,* Wyo., 464 P.2d 849 (1970); *Flora Construction Company v. Bridger Valley Electric Association, Inc.,* Wyo., 355 P.2d 884 (1960); *Barlow v. Makeeff,* 74 Wyo. 171, 284 P.2d 1093 (1955).

This rule first was alluded to by this Court in *Horvath v. Sheridan–Wyoming Coal Co.,* 58 Wyo. 211, 230, 131 P.2d 315, 321 (1942), and it has been consistently applied over the years, appearing most recently in *Saulcy Land Co. v. Jones,* 983 P.2d 1200, 1202 (Wyo. 1999).

Exculpatory clauses or releases are contractual in nature, and we interpret them using traditional contract principles and considering the meaning of the document as a whole. *Milligan v. Big Valley Corp.,* 754 P.2d 1063, 1065 (Wyo.1988); *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 712 (Wyo.1987); *Schutkowski,* 725 P.2d at 1059; *Kelliher v. Herman,* 701 P.2d 1157, 1159 (Wyo.1985). The language of the Agreement and Release is clear in manifesting an intention to release S.M.A.R.T. and those involved with the facility from liability; it specifically states that S.M.A.R.T. will not be held liable for "those damages resulting from acts of negligence on the part of S.M.A.R.T. SPORTS, its officers or agents." And, just as in *Boehm,* 748 P.2d at 712, "[a] plain reading of the language in the context of the entire membership application evidences no other rational purpose for which it could have been intended."

The Massengills endeavor to avoid the release and waiver articulated in the Agreement and Release by arguing that it is not valid as a matter of public policy because the business of S.M.A.R.T. is appropriate for

public regulation, and the nature of the use of the equipment by Massengill is not material to the public policy or public regulation determination. We said in *Fremont Homes, Inc. v. Elmer,* 974 P.2d 952, 956 (Wyo.1999):

> In Wyoming, a contract limiting liability for negligence may be enforced only if it does not contravene public policy. *Schutkowski v. Carey,* 725 P.2d 1057, 1059–60 (Wyo.1986); *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987); *Brittain v. Booth,* 601 P.2d 532, 535 (Wyo.1979).

■ In *Schutkowski,* 725 P.2d at 1060, this Court adopted from Colorado a four-part test for evaluating a negligence exculpatory clause. The factors the court considers are: "(1) whether a duty to the public exists; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." A comparison of Massengill's claim with these factors leads to the ineluctable conclusion that the district court's decision was correct as a matter of law.

■ We said in *Milligan,* 754 P.2d at 1066, "[a] duty to the public exists if the nature of the business or service affects the public interest and the service performed is considered an essential service." We then adopted from California a definition of a release agreement affecting the public interest, giving rise to a public duty, which is that it

> "concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of **great importance** to the public, which is often a matter of **practical necessity** for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it * * *. As a result of the **essential** nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services." (Emphasis added and footnotes omitted.) *Tunkl v. Regents of University of California,* 60

Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 445–46, 6 A.L.R.3d 693 (1963).

*Milligan,* 754 P.2d at 1066. We also adopted a list of examples of services which are typically subject to public regulation and which demand a public duty or are considered essential. The list includes common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers, and services involving extra-hazardous activities. *Milligan,* 754 P.2d at 1066.

■ *Schutkowski* was a case involving a sky diving injury, and we held that a private recreational business does not qualify as one that owes a special duty to the public nor are its services of a special, highly necessary nature. *Schutkowski,* 725 P.2d at 1060. The services offered by S.M.A.R.T. to its members were those of a private recreational business which did not qualify as suitable for public regulation because they did not affect the public interest nor could they be considered as necessary or essential, and there was no greater duty to the public than existed in *Schutkowski, Boehm* or *Milligan.* The district court in its Order Granting Defendant's Motion for Summary Judgment cites and relies upon decisions from other jurisdictions which have held that exculpatory clauses in health club contracts do not violate public policy. *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 926 (Minn.1982); *Shields v. Sta–Fit, Inc.,* 79 Wash.App. 584, 903 P.2d 525, 528 (1995). We are persuaded that the approach of the courts in Minnesota and Washington is the correct rule.

Massengill further maintains that he joined S.M.A.R.T. pursuant to a doctor's order, and as such was receiving an essential service; therefore, S.M.A.R.T. owed him a public duty that is subject to regulation. A casual conversation, at a drugstore one evening, with the doctor/equity owner of the S.M.A.R.T. facility hardly qualifies as a prescription. The doctor was not Massengill's treating physician nor was he acting in that capacity; he engaged in the conversation as the owner of the facility and not a physician. Moreover, the record is devoid of evidence showing that on the day he was injured, Massengill was engaging in a rehabilitation program. He admitted joining S.M.A.R.T. to

get into better physical condition. That was the purpose of his membership at S.M.A.R.T., and it qualifies as a recreational activity and not a practical necessity. Based on Massengill's own testimony, his membership was purely recreational and not pursuant to a doctor's order. There is no genuine issue of material fact as to the purpose or nature of Massengill's use of the S.M.A.R.T. facility that needs to be resolved.

The third factor in the *Schutkowski* test is whether the contract was fairly entered into. Since membership in a private recreational facility such as S.M.A.R.T. is purely optional and does not qualify as an essential service, no decisive bargaining advantage exists. "A disparity of bargaining power will be found when a contracting party with little or no bargaining strength has no reasonable alternative to entering the contract at the mercy of the other's negligence." *Milligan,* 754 P.2d at 1066. Similar to the releases in *Milligan,* which involved an optional ski race, and *Schutkowski,* which involved sky diving, no evidence suggests that Massengill was unfairly pressured into signing the agreement or was deprived of the opportunity to understand its implications. In fact, after Massengill initially toured the facilities, he was given the Agreement and Release to take with him, which he filled out at home and returned three days later.

In determining that the Order Granting Defendant's Motion for Summary Judgment should be considered under principles of contract law, we held that the last factor of the *Schutkowski* test is satisfied in this case. The intent of the parties was clearly expressed in clear and unambiguous language. We interpret exculpatory clauses or releases using traditional contract principles, and consider the meaning of the document as a whole. *Milligan,* 754 P.2d at 1067. Just as in *Boehm,* 748 P.2d at 712, "[a] plain reading of the language in the context of the entire membership application evidences no other rational purpose for which it could have been intended."

■ In a further effort to avoid the Agreement and Release, the Massengills present an argument that the Recreation Safety Act, Wyo. Stat. Ann. §§ 1–1–121 to 1–1–123 (Lex-is 1999), creates a statutory duty on the part of providers of a sport or recreational opportunity because it preserves actions based upon negligence if damage or injury is not the result of an inherent risk of the sport or recreational opportunity. The Massengills rely upon *Halpern v. Wheeldon,* 890 P.2d 562, 565 (Wyo.1995), and the distinction drawn in that case between primary assumption of risk and secondary assumption of risk. The thrust of this rather convoluted argument is that, if the conduct of the defendant comes within the category of secondary assumption of risk, a statutory duty is created by the language that preserves actions based on negligence. The Massengills then contend that the Agreement and Release cannot be enforced because it is contrary to the statutory duty. No authority is cited for that precise proposition, and we are satisfied that the Recreation Safety Act does not foreclose the invocation of a contractual release or waiver for negligent conduct that is not released by the assignment of the inherent risk to the person participating in the sport or recreational opportunity under the statute. Indeed, the limited reach of the statute would suggest that a contractual release in addition to the statute would be prudent.

With respect to the claim of Kaylea Massengill for loss of consortium, her cause of action was included in the Order Granting Defendant's Motion for Summary Judgment. She executed the same Agreement and Release that James Massengill signed. Furthermore, her claim for loss of consortium was derivative of James Massengill's claim for injuries, and it fails when his claim fails. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1301 (Wyo. 1995); *Boehm,* 748 P.2d at 708.

The only pertinent issue in this case was whether the exculpatory clause should be held to violate public policy and not enforced for that reason. The record reflects that Massengill's participation was purely recreational and S.M.A.R.T. did not owe him a public duty. S.M.A.R.T. is not engaged in a type of business generally thought suitable for public regulation, and Massengill was engaged in a recreational activity not an activity pursuant to a physician's order. The case

is correctly resolved as a matter of law under principles relating to contract, and the contractual language being clear and unambiguous, there are no genuine issues of material fact. The case is controlled by *Schutkowski* and the later cases that followed it. We affirm the district court's Order Granting Defendant's Motion for Summary Judgment.