Strafford,
June 28, 1945. } No. 3532.

HENRY L. MORIN *v.* WILLIAM H. CHAMPLIN.

*Charles F. Hartnett* (by brief and orally), for the plaintiff.

*Hughes & Burns* and *Walter A. Calderwood* (*Mr. Calderwood* orally), for the defendant.

BRANCH J. The plaintiff was injured upon January 13, 1943 while operating a replaner, so-called, in the defendant's mill at Rochester, when a board which he was planing was kicked back by the machine and struck him in the abdomen. From the defendant's brief we quote the following description of the machine: "The planer consisted of a flat bed that can be raised or lowered to accommodate varying thicknesses of lumber and was 26" wide. There were two power driven corrugated rollers 26" long and 5" to 6" in diameter that pulled the lumber across the bed to the cutters. The corrugated rollers were in segments 1" wide. These segments were held in place by 8 steel springs which permit each segment to function independently and adjust itself to variation in thickness of the boards. The cutter bars revolved towards the planer operator. There was one cutter bar above and one below so that both sides of a board could be planed in one operation. At the time Morin claims to have been injured the planer was set so that the boards after planing were $25/32$" thick."

It was claimed by the plaintiff that the feed rolls on the replaner were defective in that some of the springs inside the rolls were broken and some sections of the rolls were loose. The plaintiff's evidence tended to show that the lumber which he was planing varied considerably in thickness. At the time of the accident a board which varied in thickness from one inch to one and three-fourths inches was going through the planer when the plaintiff undertook to start another thinner board, findably seven-eighths of

an inch thick, through the machine, but by reason of the failure of the feed rolls to hold this board firmly in position, it was kicked back and caused the injury complained of.

The testimony of the plaintiff's expert tended to prove: 1, that the replaner which the plaintiff was operating was not suitable for planing rough lumber such as was being used at the time of the accident; 2, that such lumber varies in thickness which results in insufficient pressure of the feed rolls on the thinner pieces; 3, that the feed rolls on this machine were loose and the springs broken, which was a further cause of inadequate pressure; 4, that the plaintiff was negligently instructed to put two or three boards through at the same time; that all four of these factors combined to create the hazard from which the accident resulted. The foregoing testimony was sufficient to make out a case of negligence for the jury and the motions for a nonsuit and a directed verdict were properly denied.

The defendant contends that the plaintiff was guilty of contributory negligence by reason of the fact that, at the time of the accident, he was standing in front of the machine, whereas the danger of a kick 'back might have been avoided if the plaintiff had stood to one side. Plaintiff's answer to this contention is that he was forced to stand in this position because of the fact that the "gig" on which the lumber was brought into the mill from the outside was placed beside the replaner by the express instructions of the defendant which of necessity required the plaintiff to do his work in front of the machine, and that he never knew of a board being kicked back by this machine. The testimony upon this point comprises a considerable portion of the record, from which it is abundantly plain that the question of the plaintiff's contributory negligence cannot be decided as a matter of law.

Defendant also contends that the plaintiff was guilty of contributory negligence because his conduct constituted a violation of a rule established for his safety. The argument is that the plaintiff was "supposed" to use only one inch lumber on the replaner when it was set for a thickness of twenty-five thirty-seconds of an inch, as it was at the time of the accident, whereas he stated that the first piece of lumber which was put in the planer varied from one inch to one and three-fourths inches. The second piece was seven-eighths of an inch thick. This evidence is not sufficient to require a finding of contributory negligence as a matter of law, since there is no evidence that the supposed rule was a safety regulation

established for the protection of the plaintiff, and the plaintiff's estimates of the thickness of the various boards which he handled need not be taken as absolutely accurate. This issue was properly submitted to the jury.

The question of the plaintiff's assumption of risk was similarly for the jury. "Unless the evidence in favor of the defendants is . . . so definite and certain that reasonable men must . . . decide it adversely to the plaintiff," (*Hill* v. *Company*, 81 N. H. 190, 193), this issue must be submitted to the jury. The evidence that the plaintiff was acting under express orders and assurances of safety precludes the decision of this question as a matter of law. *Demers* v. *Becker*, 91 N. H. 519.

The foregoing conclusions indicate that there was no error in the denial of the defendant's motions to withdraw certain issues from the jury; namely, failure to furnish "a safe and suitable work place"; failure to provide "suitable tools and instrumentalities to work . . . ; failure to warn, caution and instruct . . . ; failure to furnish sufficient appliances and safeguards . . . ; failure to have sufficient and proper methods and rules for carrying on said work."

The defendant excepted to the Court's failure to charge the jury that he was not liable because of the fact that the newest and most modern equipment was not provided. The substance of this request was given in the charge and the exception is overruled.

The defendant excepted to the refusal of the Court to charge the jury that the plaintiff "must show that he was injured because of a danger of which the defendant knew and of which he did not know was incident to using the tools, machinery and equipment on which he claims to have been injured." This subject was sufficiently covered by the portion of the charge which dealt with the master's duty to inform the servant of the dangers incident to the work, and the exception is overruled.

The defendant excepted to the refusal of the Court to charge the jury that he was not liable if "he had no knowledge of the possibility of injury by the use of the instrumentalities, tools and equipment in the manner required." This request was properly denied as an incorrect statement of the law, in that it ignored the possibility of culpable ignorance on the part of the defendant, and the exception is overruled.

The defendant excepted to the denial of a request that he was not liable "if the injury was caused by the negligence of a fellow servant." At the close of the plaintiff's evidence, the Court stated:

"*Court:* I think I will order that withdrawn from the jury's consideration." No such issue was raised by the evidence or submitted to the jury, and the defendant, therefore, takes nothing by this exception.

The defendant requested the Court to charge the jury as follows: "(12) Any evidence of repairs made to the machinery or equipment after the accident is not to be considered by you as evidence of a defect in the machinery at or prior to the time of the accident and is not to be considered by you as an admission of liability on the part of the defendant." The Court charged the jury as follows: "Any evidence of repairs made to the machinery or equipment after the accident is not to be considered by you as an admission of liability on the part of the defendant." This was all that the defendant was entitled to and this exception is overruled. The question of the admissibility of evidence of such repairs which was received solely for the purpose of showing the condition of the feed rolls at the time of the accident is not likely to arise at another trial and has not, therefore, been considered.

Defendant's exception to the rulings of the Court upon questions of evidence, which are referred to in his brief under the headings, A. Hearsay, B. Leading Questions, C. Conclusions, are frivolous and do not merit further consideration.

Subject to the defendant's exception, counsel for the plaintiff in his argument to the jury read sections 1 and 2 of the Employers' Liability and Workmen's Compensation Act (R. L., *c.* 216). In overruling the defendant's objection to the reading of this statute the Court made the following statement: "*Court:* I think it is particularly applicable to this case, Workmen's Compensation." These sections state the liability of an employer who has not accepted the provisions of the Act. The defendant introduced evidence that he had accepted the provisions of the Act, and following the admission of this evidence, the following colloquy took place: "*Court:* Do you question the acceptance? *Mr. Hartnett:* No."

The statute itself says that section 2 shall not apply to any employer who has filed with the Commissioner of Labor "his declaration in writing that he accepts the provisions of this chapter." "In such case the existing right of action at common law is preserved to employees who elect such action instead of the compensation established by the act. . . . Hence the present action is at common law and the statute is inapplicable." *Bjork* v. *Company,* 79 N. H. 402, 404. In accordance with this decision the defendant's exception to the reading of the statute must be sustained.

In *Olney* v. *Railroad*, 73 N. H. 85, 87, a portion of the opinion of the Supreme Court upon a prior transfer of the case was read to the jury. In holding this to constitute reversible error, the Court said: "The effect of reading the extract must have been to mislead and prejudice the jury in favor of the plaintiff, by inducing them to believe that the Supreme Court had expressed an opinion favorable to the plaintiff's contentions." By the same token, we think that the effect of reading the sections of the statute above referred to must have been to mislead and prejudice the jury in favor of the plaintiff by inducing them to believe that the defendant was subject to the unqualified liability imposed by section 2 of the Act, a conclusion which was strengthened by the statement of the trial Court that the statute was "particularly applicable to this case." For this reason the verdict must be set aside.

During his argument to the jury, counsel for the plaintiff commented upon the failure of the defendant to produce certain available witnesses and the defendant's failure to produce the feed rolls and the board which were alleged to have caused the plaintiff's injury. To allowance of these arguments the defendant excepted, but the exception is without merit. *Beardsell* v. *School*, 89 N. H. 459, 463.

Defendant's exception to the denial of his motion to set aside the verdict on the ground that the damages were excessive is also overruled. The plaintiff's physician testified that five different conditions resulted from the accident: 1, "Kink ileum," causing a partial intestinal obstruction; 2, Diverticulitis; 3, Colitis resulting from the diverticulitis; 4, enlarged spleen; 5, "Visible" loss of weight amounting to 15 or 20 pounds. The first four conditions above mentioned were all painful, while the diverticulitis was described as incurable. There was evidence of medical expense and lost wages amounting to $951.15. Under these circumstances it cannot be said as a matter of law that the verdict of $5,000 was excessive.

*New trial.*

MARBLE, C. J., was absent: the others concurred.