Merrimack
No. 94-266

### BRENDA WRIGHT

v.

### LOON MOUNTAIN RECREATION CORPORATION
### d/b/a LOON MOUNTAIN EQUESTRIAN CENTER

August 22, 1995

*Craig, Wenners, Craig & Casinghino, P.A.*, of Manchester (*Gary L. Casinghino* and *Gemma M. Dreher* on the brief, and *Mr. Casinghino* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Gregory D. H. Jones* and *Joseph M. McDonough, III*, on the brief, and *Mr. Jones* orally), for the defendant.

JOHNSON, J. The question presented is whether an exculpatory contract signed by the plaintiff, Brenda Wright, released the defendant, Loon Mountain Recreation Corporation, from liability for its own negligence. The Superior Court (*Manias*, J.) found that the signed release barred the plaintiff's negligence claim and granted the defendant's motion for summary judgment. We reverse.

Before embarking on a horseback riding tour at the Loon Mountain Equestrian Center, owned and operated by the defendant, the plaintiff was asked to read, complete, and sign the following exculpatory agreement:

> I accept for use, as is, the animals listed on this form and accept full responsibility for its care while it is in my possession. I have made no misrepresentation to Loon Mountain regarding my name, address or age. I agree to hold harmless and indemnify Loon Mountain Recreation Corporation and its owners, agents and employees for any loss or damage, including any that result from claims for personal injury or property damage related to the use of this animal.

> I understand and am aware that horseback riding is a HAZARDOUS ACTIVITY. I understand that the above activity and the use of horses involves a risk of injury to any and all parts of my body. I hereby agree to freely and expressly assume and accept any and all risks of injury or death from the use of this animal while participating in this activity.

> I understand that it is not possible to predict every situation and condition of the terrain a horse will be ridden on; therefore, it is impossible to guarantee the horse I am riding will react safely in all riding situations.

I realize that it is mandatory that I wear a helmet at all times while horseback riding, and that I will obey all trail signs and remain only on open trials.

I therefore release Loon Mountain Recreation Corporation, its owners, agents and employees FROM ANY AND ALL LIABILITY FOR DAMAGES AND PERSONAL INJURY TO MYSELF OR ANY PERSON OR PROPERTY RESULTING FROM THE NEGLIGENCE OF LOON MOUNTAIN RECREATION CORPORATION TO INCLUDE NEGLIGENCE IN SELECTION, ADJUSTMENT OR ANY MAINTENANCE OF ANY HORSE, accepting myself the full responsibility for any and all damages or injury of any kind which may result. (PLEASE SIGN: Brenda Wright/s)

I agree that there have been no warranties, expressed or implied, which have been made to me which extend beyond the description of the equipment listed on this form. I the undersigned, acknowledge that I have carefully read this agreement and release of liability, and I understand its contents. I understand that my signature below expressly waives any rights I have to sue Loon Mountain Recreation Corporation for injuries and damages.

The plaintiff signed this agreement after the fifth paragraph and at the bottom.

While on the tour, the plaintiff was kicked in the leg by her guide's horse and sustained an injury. She brought a negligence action against the defendant, alleging that her tour guide had failed to respond to indications that his horse was about to "act out." The defendant argued that the exculpatory contract barred the plaintiff's suit and moved for summary judgment. The Superior Court (*Manias*, J.) granted its motion, and this appeal followed.

On appeal, the defendant argues that we should uphold the trial court's grant of summary judgment because the contract "clearly and specifically indicated an intent to release Loon Mountain from liability for injury resulting from its own negligence while [the plaintiff] was engaged in the activity of horseback riding."

The trial court must grant summary judgment when it finds no genuine issue of material fact, after considering the affidavits and other evidence presented in a light most favorable to the non-moving party, and when the moving party is entitled to judgment as a matter of law. The party opposing summary judgment must put forth contradictory

evidence under oath, sufficient to indicate that a genuine issue of fact exists so that the party should have an opportunity to prove the fact at trial. All reasonable doubts should be resolved against the movant.

*Phillips v. Verax Corp.*, 138 N.H. 240, 243, 637 A.2d 906, 909 (1994) (brackets, ellipses, and quotations omitted).

 This court will not enforce an exculpatory contract that contravenes public policy. *Audley v. Melton*, 138 N.H. 416, 418, 640 A.2d 777, 779 (1994). "Once an exculpatory agreement is found unobjectionable as a matter of public policy, it will be upheld only if it appears that the plaintiff understood the import of the agreement or that a reasonable person in his position would have known of the exculpatory provision." *Barnes v. N.H. Karting Assoc.*, 128 N.H. 102, 107, 509 A.2d 151, 154 (1986). "[S]ince the terms of the contract are strictly construed against the defendant, the contract must clearly state that the defendant is not responsible for the consequences of his negligence." *Id.*

The plaintiff does not argue that the exculpatory contract contravenes public policy. Accordingly, we determine only whether "the plaintiff understood the import of the agreement," and if not, whether "a reasonable person in [her] position would have known of the exculpatory provision." *Id.*

 The parties dispute whether the plaintiff understood the agreement to release the defendant from liability for its own negligence. The plaintiff's understanding presents an issue of fact, and the plaintiff should have an opportunity to prove the fact at trial unless the exculpatory language was clear and a misunderstanding was unreasonable. *See Phillips*, 138 N.H. at 243, 637 A.2d at 909; *Barnes*, 128 N.H. at 107, 509 A.2d at 154.

 We therefore examine the language of the release to determine whether "a reasonable person in [the plaintiff's] position would have known of the exculpatory provision." *Barnes*, 128 N.H. at 107, 509 A.2d at 154; *cf. Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 59, 623 A.2d 746, 747 (1993) (interpretation of insurance contract language a question of law; we construe terms as would reasonable person in insured's position). A reasonable person would understand the provision if its language "clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence . . . ." *Barnes*, 128 N.H. at 107, 509 A.2d at 154. We will assess the clarity of the contract by evaluating it as a whole, not by examining isolated

words and phrases. *See Chadwick v. CSI, Ltd.*, 137 N.H. 515, 524, ~~629 A.2d 820~~, 826 (1993).

We conclude that the contract structure and organization obscured the exculpatory clauses. Strictly construing the contract language against the defendant, we find the contract did not clearly relieve the defendant of responsibility for the sort of negligence at issue in this case. *See Barnes*, 128 N.H. at 107, 509 A.2d at 154.

The defendant emphasizes the language of the agreement's fifth paragraph, which states: "I *therefore* release [the defendant] from ANY AND ALL LIABILITY FOR . . . PERSONAL INJURY TO MYSELF . . . RESULTING FROM THE NEGLIGENCE OF [THE DEFENDANT] TO INCLUDE NEGLIGENCE IN SELECTION, ADJUSTMENT OR ANY MAINTENANCE OF ANY HORSE, accepting myself the full responsibility for any . . . injury of any kind which may result." (Emphasis added.) We find that when this clause is read within the context of the entire agreement, its meaning is less than clear.

In this case, the term "therefore" is significant. A common definition of "therefore" is "for that reason: because of that: on that ground . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2372 (unabridged ed. 1961) (WEBSTER'S ). A clause that is introduced by the term "therefore" cannot be understood without reading the antecedent language.

The paragraphs preceding the exculpatory clause emphasize the inherent hazards of horseback riding. Because the exculpatory clause is prefaced by the term "therefore," a reasonable person might understand its language to relate to the inherent dangers of horseback riding and liability for injuries that occur "for that reason." Being kicked by a horse is a danger inherent to horseback riding; receiving an injury that would not have occurred but for a tour guide's negligence, however, is not.

The exculpatory phrase in the fifth paragraph is further clouded by the qualifying language that follows. Pursuant to the contract, the defendant is released from liability for its negligence "to include negligence in selection, adjustment or any maintenance of any horse." If we parse these terms, they do not necessarily restrict the defendant's release to liability for negligent selection, adjustment, or maintenance of any horse. The superfluity of the terms, however, serves to obscure rather than clarify. Moreover, one sense of the word "inclusive" is "covering or intended to cover all items . . . ." WEBSTER'S, *supra* at 1143. A reasonable person reading the clause thus might conclude that the agreement relieved the defendant of responsibility for the enumerated types of negligence only.

Whether the tour guide's failure to control his horse constitutes "the negligent . . . maintenance of any horse," is unclear. WEBSTER'S gives several definitions for the word "maintain," the two most relevant being: (1) "to keep in a state of repair, efficiency, or validity: preserve from failure or decline" and (2) "to provide for: bear the expense of: SUPPORT." WEBSTER'S, *supra* at 1362. When read in the context of selection and adjustment, therefore, a reasonable person in the position of the plaintiff might understand "the negligent . . . maintenance of any horse" to relate to negligent upkeep rather than control.

■■ The contract is also unclear with respect to injuries involving horses not ridden by the plaintiff. The first, second, and third paragraphs emphasize only the horse that the plaintiff "accept[s] for use." We reject the defendant's argument that the phrase "use of this animal," used in the first and second paragraphs, "is merely an alternative expression for the activity of 'horseback riding.'" We also reject the defendant's contention that the phrase "use of this animal" does not limit the contract's application to injuries involving the plaintiff's horse because "[a] careful reading . . . reveals that it is part of a clause modifying plaintiff's agreement to 'hold harmless and indemnify [the defendant] for any loss or damage. . . .'" The *Barnes* test requires that release language be plain; a careful reading should not be necessary to divine the defendant's intent.

In *Audley*, we concluded:

> Quite simply, the general release language does not satisfy the *Barnes* requirement that the contract must clearly state that the defendant is not responsible for the consequences of his negligence. The release fails in this respect not because it neglects to use the word 'negligence' or any other special terms; instead it fails because no *particular* attention is called to the notion of releasing the defendant from liability for his own negligence. The general language in the context of the release simply did not put the plaintiff on clear notice of such intent.

*Audley*, 138 N.H. at 419, 640 A.2d at 779 (quotations and citations omitted). Whereas the release language in *Audley* failed because it was too general, the release language in the present case fails because it is obscured by qualifying terms and phrases. The cases are similar, however, because neither contract put the plaintiff "on clear notice," *id.*

The exculpatory contract lacks a straightforward statement of the defendant's intent to avoid liability for its failure to use reasonable

care in any way. The agreement easily could have been framed in a manner that would have expressed more clearly its conditions and exclusions. The defendant was not entitled to judgment as a matter of law.

*Reversed and remanded.*

THAYER, J., with whom BROCK, C.J., joined, dissented; the others concurred.

THAYER, J., dissenting: I would uphold the trial court's grant of summary judgment because the exculpatory contract explicitly indicated an intent to release the defendant from liability for its own negligence. The contract in question purports to release the defendant from "ANY AND ALL LIABILITY FOR . . . PERSONAL INJURY TO MYSELF . . . RESULTING FROM THE NEGLI-GENCE OF [THE DEFENDANT] TO INCLUDE NEGLIGENCE IN SELECTION, ADJUSTMENT OR ANY MAINTENANCE OF ANY HORSE." The language clearly indicates an intent to release the defendant from liability for its own negligence. I agree with the majority that the use of the word "therefore" restricts the release to negligence associated with the inherent hazards of horseback riding. I do not agree, however, that the negligence alleged is not such a risk. The plaintiff alleged that the defendant's employee had failed to properly control his horse, and that as a result, the horse "acted out." Controlling a horse is an essential part of horseback riding. The possibility that someone will fail to exercise the proper control would seem to fall squarely within the category of dangers inherent in the sport.

The majority bases its holding in part on its interpretation of the phrase "to include." In holding that the list prefaced by the words "to include" is meant to be exhaustive, the majority relies on a definition of the word "inclusive." Such reliance is misplaced. The contract used the word "include" as a verb. The primary relevant definition of that word is "to place, list, or rate as a part or component of a whole or a larger group, class, or aggregate." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (un-abridged ed. 1961) (WEBSTER'S). "Inclusive," however, is an adjec-tive and its definition differs from the verb form of the word. *See In re Dumaine*, 135 N.H. 103, 107, 600 A.2d 127, 129 (1991). The use of the verb form of the word indicates that the listed types of negligence are "component[s] of a whole or a larger group," WEBSTER'S, *supra*, and that the list was not exhaustive.

The appropriate question, therefore, is whether the negligence alleged in this case is of the same type as those listed. The plaintiff

alleges that the defendant's employee failed to properly control his mount. This would seem to fall squarely within the type of negligence defined by the contract. That the horse causing the injury was not ridden by the plaintiff is irrelevant. The contract releases the defendant for negligence resulting from "the use of horses" and specifically from "NEGLIGENCE IN SELECTION, ADJUSTMENT OR *ANY* MAINTENANCE OF *ANY* HORSE." (Emphasis added.) While the contract does refer to the plaintiff's horse on a number of occasions, it also refers to horses generally and to "any" horse. This language cannot be read to restrict the defendant's release solely to injuries caused by the plaintiff's horse. I disagree with the majority's reading of the exculpatory contract. Therefore, I respectfully dissent.

BROCK, C.J., joins in the dissent.