Rockingham
No. 2000-121

CHARLES DEAN *& a.*

v.

JOHN MACDONALD d/b/a LEE USA SPEEDWAY *& a.*

December 10, 2001

*Edward F. Wallace*, of North Chelmsford, Massachusetts, by brief and orally, for the plaintiffs.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Edward M. Kaplan* and *Sarah S. Murdough* on the brief, and *Mr. Kaplan* orally), for the defendants.

DALIANIS, J. The plaintiffs, Charles and Jean Dean, appeal from an order of the Superior Court (*Abramson*, J.) granting summary judgment to the defendants, John MacDonald d/b/a Lee USA Speedway and National Association for Stock Car Auto Racing, Inc., upon Mr. Dean's negligence claim. We affirm and remand.

The relevant undisputed facts follow. Mr. Dean became involved in automobile racing in 1968. In August 1998, while attending a race at the Lee USA Speedway (the Speedway), he sought entrance to the pit area to work on a race car. Before entering the pit area, he was required to sign a "Release and Waiver of Liability and Indemnity Agreement" (Release) that purported to release the defendants from liability for negligence claims. On the approximately six other occasions on which Mr. Dean

entered the pit area at the Speedway, he was required to sign a similar form. He has also signed a similar form each time he entered the pit area of any race track in the five years preceding the accident.

The top portion of the Release form stated that it was a "RELEASE OF LIABILITY." It instructed the reader to "CAREFULLY READ" the document, and stated that signing the Release was required to enter any "RESTRICTED AREA," defined to include "the racing surface, pit areas, [and] infield." The top portion of the Release also stated that before entering a restricted area, the signer agrees and represents that he or she has inspected the area and found it to be safe and that if, at any time, he or she feels unsafe, he or she will advise officials and leave the restricted area.

The body of the Release provided in relevant part that the signer

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE THE PROMOTERS, PARTICIPANTS, RACING ASSOCIATION, SANCTIONING ORGANIZATION OR ANY SUBDIVISION THEREOF, TRACK OPERATOR, TRACK OWNER, OFFICIALS, VEHICLE OWNERS, DRIVERS, PIT CREWS, ANY PERSONS IN ANY RESTRICTED AREA, ... OWNERS AND LESSEES OF PREMISES USED TO CONDUCT THE EVENT ... AND EACH OF THEM, THEIR DIRECTORS, OFFICERS, AGENTS AND EMPLOYERS, ALL FOR THE PURPOSES HEREIN REFERRED TO AS THE "RELEASEES," FROM ALL LIABILITY to the undersigned ... for any and all loss or damage, and any claim or demands therefore on account of injury to the person ... of the undersigned, whether caused by the negligence of the "Releasees" or otherwise while the undersigned is in or upon the restricted area, and/or competing, officiating in, observing, working for, or for any purposes participating in the event.

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS THE "RELEASEES" ... from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing, officiating, observing, or working for, or for any purpose participating at any time in the event and whether caused by the negligence of the "Releasees" or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY ... DUE TO THE

NEGLIGENCE OF "RELEASEES" OR OTHERWISE while in or upon the restricted areas . . . .

The bottom portion of the Release stated that the signer "acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death" and that the signer has read and signed the Release voluntarily. The signature lines also stated, "THIS IS A RELEASE OF LIABILITY" and "I HAVE READ THIS RELEASE."

Mr. Dean signed the Release before entering the infield pit area. At some point, he left the infield pit area to measure tires. Before crossing the track to return to the infield, he waited for a race official to indicate that it was safe to cross. Once the official so indicated, Mr. Dean began to cross the track and was struck by a race car doing practice laps.

Mr. Dean brought a negligence claim and his wife brought a loss of consortium claim. The defendants moved for summary judgment upon the negligence claim, arguing that it was barred by the Release. The trial court granted the motion. The parties then filed a joint motion to stay proceedings on the loss of consortium claim pending a decision by this court upon the plaintiffs' appeal from the grant of summary judgment. The trial court granted the stay. Under these circumstances, we waive the requirements of Supreme Court Rule 8 and treat the plaintiffs' interlocutory appeal as properly before us. *See* SUP. CT. R. 1.

On appeal, Mr. Dean argues that the Release is unenforceable because: (1) he did not contemplate the risk that he would be injured while crossing the track at a race official's direction; (2) he was not given an opportunity to read the release; and (3) the Release failed to identify the defendants by name.

"In reviewing a grant of summary judgment, we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." *N.E. Tel. & Tel. Co. v. City of Rochester*, 144 N.H. 118, 120 (1999) (quotation omitted). "We will affirm if the evidence reveals no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law." *Forbes Farm Partnership v. Farm Family Mut. Ins. Co.*, 146 N.H. 200, 201 (2001) (quotation omitted). "We review the trial court's application of the law to the facts *de novo*." *Iannelli v. Burger King Corp.*, 145 N.H.190, 193 (2000).

## I. Contemplation of Risk

■ Before addressing Mr. Dean's claims, we begin by reviewing the law pertaining to exculpatory contracts. Although New Hampshire law generally prohibits exculpatory contracts, we will enforce them if: (1) they do not violate public policy; (2) the plaintiff understood the import of the

agreement or a reasonable person in his position would have understood the import of the agreement; and (3) the plaintiff's claims were within the contemplation of the parties when they executed the contract. *See Barnes v. N.H. Karting Assoc.*, 128 N.H. 102, 106-07 (1986). Mr. Dean first asserts that the Release is unenforceable because his claims were not contemplated by the parties.

■■ To determine the scope of the Release, we examine its language. *See id.* at 109. In interpreting a release, we "give [the] language used by the parties its common meaning [and] give the contract itself the meaning that would be attached to it by a reasonable person." *Id.* (citation omitted). "As long as the language of the release clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence, the agreement will be upheld." *Id.* at 107. We strictly construe exculpatory contracts against the defendant. *Id.*

Mr. Dean urges us to determine the scope of the Release according to his subjective intent, arguing that it was not intended to cover the risk that he would be injured while crossing the race track at an official's direction because neither he nor the defendants had ever known anyone to be injured in this way. We "judge the intent of the parties by objective criteria rather than the unmanifested states of mind of the parties," however. *Lake v. Sullivan*, 145 N.H. 713, 715 (2001) (quotation omitted); *see also Barnes*, 128 N.H. at 107.

In *Barnes*, we held that the parties need not have contemplated the precise occurrence that caused the plaintiff's injuries. *Barnes*, 128 N.H. at 107. "They may adopt language to cover a broad range of accidents . . . by specifying injuries involving negligence on the part of the defendants." *Id.*

■ The language of the Release, in most material respects, is identical to the language we upheld in *Barnes*. Like the release in *Barnes*, the Release relieved the defendants

> from all liability to the undersigned . . . for any and all loss or damage, and any claim or demands therefore on account of injury to person or property or resulting in death of the undersigned, whether caused by the negligence of the Releasees while the undersigned is in or upon the restricted area, and/or competing, officiating in, observing, working for, or for any purpose participating in the event.

*See id.* at 105, 109. This language "clearly and specifically" indicates the intent to release the defendants from liability for the consequences of their own negligence and is sufficient "to cover a broad range of accidents"

occurring at automobile races. *Id.* at 107. Moreover, Mr. Dean's claim fits within this broad scope. He sustained injuries while in or upon a restricted area (the racing surface) due to the alleged negligence of one of the Releasees (a race official).

Our conclusion is consistent with cases in other jurisdictions. For instance, in *Schlessman v. Henson*, 413 N.E.2d 1252, 1253 (Ill. 1980), the plaintiff, an experienced race car driver, had signed a release relieving the defendants from all personal injury claims "whether caused by the negligence of Releasees or otherwise while the Undersigned is upon the Restricted Area." The court ruled that the plaintiff's accident, caused by the collapse of the upper track embankment, was within the contemplation of the parties. *Id.* at 1253-54. As the court explained:

> The racing of automobiles at a high speed in limited areas gives rise to various situations which have resulted in the death or injury to drivers, mechanics and spectators at these events. These accidents may occur because of factors involving mechanical failures, defective design of guardrails, driver error or weather conditions affecting driving surfaces. In sum, a myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing. The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing.

*Id.*; *see also Kellar v. Lloyd*, 509 N.W.2d 87, 90-91 (Wis. Ct. App. 1993) (possibility that plaintiff, a volunteer member of the flagging and communications crew, would be injured by race car driver engaging in practice laps was within contemplation of parties to release).

Although we hold that the Release was intended to apply to a broad range of accidents occurring in automobile racing, we observe that this range is not without limitation. *See, e.g., Arnold v. Shawano County Agr. Soc.*, 330 N.W.2d 773, 778 (Wis. 1983) (material issue of fact as to whether risk that race car driver would be injured by toxic fumes sprayed during rescue operation was contemplated by parties to exculpatory contract), *overruled on other grounds*, *Green Spring Farms v. Kersten*, 401 N.W.2d 816 (Wis. 1985). We do not identify what falls outside of the range in this case because Mr. Dean's claim falls so clearly within it.

■ Mr. Dean argues that, as a matter of law, the Release was limited to the ordinary risks inherent in the sport of automobile racing. *See Simpson v. Byron Dragway, Inc.*, 569 N.E.2d 579, 583-84 (Ill. Ct. App. 1991). We need not decide this issue because, even assuming that the Release is limited to such risks, it still bars Mr. Dean's claim. The risk of being hit by an automobile while on the racing surface of a race track *is* an ordinary risk inherent in the sport of automobile racing. "Driving competition vehicles on a racing surface during a race is inherently dangerous; attempting to walk on the surface during a race is flirting with a high risk of being seriously injured. Absent impaired mental faculties, one need not be an experienced spectator or competitor to recognize the potential for injury." *Deboer v. Florida Offroaders Driver's Ass'n*, 622 So. 2d 1134, 1136 (Fla. Dist. Ct. App. 1993). Nor need one be an experienced racing enthusiast to recognize the potential for injuries from attempting to cross the racing surface during practice laps. *See Barnes*, 128 N.H. at 109 (accident occurring during practice laps is covered by release).

■ Mr. Dean argues that the track official's directive to cross the track "supplanted any risk" he assumed. *See Morin v. Champlin*, 93 N.H. 422, 425 (1945). None of the cases he cites for this proposition, however, apply to situations in which the plaintiff has expressly assumed a risk by entering into an exculpatory contract. The cases he cites concern implied assumption of the risk, *see Benitez v. New York City Bd. of Educ.*, 541 N.E.2d 29 (N.Y. 1989), and New Hampshire common law no longer recognizes implied assumption of the risk as a defense to negligence claims arising from sporting events. *See Hacking v. Town of Belmont*, 143 N.H. 546, 553 (1999); *Nutbrown v. Mount Cranmore*, 140 N.H. 675, 682 (1996).

■ Further, to satisfy the theory of inherent compulsion (the doctrine to which Mr. Dean refers), a plaintiff must show that he was directed "by a superior" to do an act and that he was compelled to comply with this directive because of "an economic compulsion or other circumstance." *Benitez*, 541 N.E.2d at 33 (quotations omitted). The record contains no evidence that the race official was Mr. Dean's "superior" or that Mr. Dean was compelled by economics or otherwise to cross the track. In the Release, Mr. Dean stated that he relied upon his own inspection of the restricted area and agreed to leave it immediately if he felt "anything to be unsafe."

## II. Opportunity to Read Release

■ Mr. Dean next argues that his deposition and affidavit raised a material issue of disputed fact as to whether he was denied the opportunity to read the Release. We disagree. By his own admission, Mr. Dean had the opportunity to read the Release, but chose not to take it. As he admitted in his deposition, although the Release was on a clipboard held by a female race track employee, he "really didn't think about" taking the clipboard in his hands and moving it closer to him. Although he was physically able to read where the document noted that it was a release of liability, "he never bothered" to do so because he was "paying attention to the girl" holding the Release. "Having failed to avail himself of that opportunity, yet gaining the admission to which his signature was a condition precedent, he cannot now complain that he had no notice of the import of the paper he signed." *Barnes*, 128 N.H. at 108 (quotation, brackets and ellipsis omitted).

## III. Failure to Identify Defendants by Name

■ Mr. Dean next contends that the Release was invalid because it failed to identify the defendants by name or reference something from which he could have ascertained their names. "We agree with the trial court's determination that the functional rather than the specific identification of those released made clear . . . that the release was to apply to all parties associated with the race." *Arnold v. Shawano County Agric. Society*, 317 N.W.2d 161, 164 (Wis. Ct. App. 1982), *aff'd*, 330 N.W.2d 773 (Wis. 1983).

*Affirmed and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.