NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2019-0354


THERESA A. LADUE

v.

PLA-FIT HEALTH, LLC


Argued: June 10, 2020
Opinion Issued: October 30, 2020


Follender Law Offices, P.L.L.C., of Nashua (Richard C. Follender on the brief and orally), for the plaintiff.


Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael R. Mortimer and Michael G. Eaton on the brief, and Mr. Eaton orally), for the defendant.


Welts, White & Fontaine, P.C., of Nashua (Israel F. Piedra on the brief and orally), for New Hampshire Association for Justice, as amicus curiae.


BASSETT, J. The plaintiff, Theresa A. Ladue, was injured in a fall at a gym in Nashua operated by the defendant, Pla-Fit Health, LLC (Planet Fitness). Ladue brought a negligence claim against Planet Fitness. Planet Fitness moved

for summary judgment.  The Superior Court (Temple, J.) granted the motion, finding that Ladue's claim was barred by a release of liability provision in her membership agreement.  Ladue now appeals.  We affirm.

The record supports the following facts.  In April 2017, Ladue entered into a membership agreement with Planet Fitness.  The agreement included a liability release, which stated, in part: "I understand and voluntarily accept full responsibility . . . for the risk of injury or loss arising out of or related to my use . . . of the facilities," and "I further agree that Planet Fitness . . . will not be liable for any injury . . . resulting from the negligent conduct or omission of Planet Fitness, PF Corporate, or anyone acting on their behalf, whether related to exercise or not."  (Emphases added.)

In September 2017, Ladue went to a Planet Fitness gym in Nashua. After exercising on a treadmill, Ladue walked toward a trash bin to dispose of a towel that she had used to wipe down the equipment.  Ladue tripped and fell on an "irregular and uneven walkway," and her right arm "struck an uncovered, unprotected bolt" extending from an interior chain link fence. Ladue suffered a gash on her right arm and a broken wrist.

In 2018, Ladue brought this action, alleging that Planet Fitness was negligent in maintaining its facility.  Planet Fitness moved for summary judgment.  The trial court granted the motion, ruling that Ladue's claim was barred by the liability release.  The court found that the release did not violate public policy, and that the language of the release shielded Planet Fitness from liability for Ladue's injury.  This appeal followed.

When reviewing a trial court's entry of summary judgment, "[w]e review de novo the trial court's application of the law to the facts in its summary judgment ruling."  Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 652 (2005).  "[W]e consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party."  Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 248 (2006) (quotation omitted).  "If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision."  Amica Mut. Ins. Co. v. Mutrie, 167 N.H. 108, 111 (2014) (quotation omitted).

"This court will not enforce an exculpatory contract that contravenes public policy."  Wright v. Loon Mt. Recreation Corp., 140 N.H. 166, 169 (1995). "Once an exculpatory agreement is found unobjectionable as a matter of public policy," Barnes v. N.H. Karting Assoc., 128 N.H. 102, 107 (1986), we will enforce the agreement if "the plaintiff understood the import of the agreement or a reasonable person in his position would have understood the import of the agreement."  McGrath v. SNH Dev., 158 N.H. 540, 542 (2009) (quotation

2

omitted). The plaintiff's claims must also have been "within the contemplation of the parties when they executed the contract." Id. (quotation omitted).

When a defendant asserts that a plaintiff's claim is barred by an exculpatory agreement, the defendant "must show that [the] exculpatory agreement does not contravene public policy; i.e., that no special relationship existed between the parties and that there was no other disparity in bargaining power." Id. at 543 (quotation omitted). "We have found an agreement to be against public policy if, among other things, it is injurious to the interests of the public, violates some public statute, or tends to interfere with the public welfare or safety." Id.

On appeal, Ladue raises two primary arguments. First, she argues that the trial court erred in enforcing the liability release because the release violates public policy. Second, she argues that even if the release does not violate public policy, it is unenforceable because a reasonable person would not understand it to shield Planet Fitness from liability for the injury that she suffered.

We first address Ladue's argument that the release violates public policy because a special relationship exists between her and Planet Fitness, such that the agreement is prohibited. Ladue asserts that, because any member of the public may join the gym, Planet Fitness is open to the public and, therefore, a special relationship exists between Planet Fitness and each of its members. Planet Fitness counters that, because the gym does not provide an essential service, and does not fall within any of the commonly-recognized classes of persons charged with special duties to their patrons, it does not have a special relationship with Ladue. We agree with Planet Fitness.

In New Hampshire, "a special relationship exists where the defendant is a common carrier, innkeeper or public utility, or is otherwise charged with a duty of public service." Id. at 544 (quotation and brackets omitted). A special relationship also exists if the defendant provides a service that is "of great importance to the public," or is "a matter of practical necessity." Barnes, 128 N.H. at 108; see also McGrath, 158 N.H. at 544. Additionally, a special relationship may exist when the plaintiff is both dependent on and legally compelled to use the defendant's services. See Marquay v. Eno, 139 N.H. 708, 717 (1995) (ruling that a special relationship exists between schools and students because of the compulsory nature of school attendance, the reliance of parents and students on schools to provide a safe environment, and the critical importance of education to society).

Accordingly, whether such a special relationship exists turns largely on the importance and necessity of the services provided by the defendant, and not, as Ladue suggests, on whether a facility is open to the public. As we

3

explained in McGrath, "the fact that [a recreational facility] is available for public use is not dispositive of a special relationship." McGrath, 158 N.H. at 544. In fact, we have held that, because a given recreational activity was not of great importance or necessity, no special relationship existed between a recreational facility and members of the public using the facility. See Barnes, 128 N.H. at 106, 108 (finding no special relationship between a go-kart racing facility that served "a segment of the public" and a racer who used the facility); McGrath, 158 N.H. at 544 (finding no special relationship between a ski facility that was open for public use and a snowboarder who used the facility).

Here, as in McGrath and Barnes, we cannot say that the recreational use of a private gym is of such great importance or necessity to the public that it creates a special relationship, such that the release is prohibited as against public policy. See McGrath, 158 N.H. at 544; Barnes, 128 N.H. at 106, 108. Exercising at a private gym is not a matter of practical necessity. See, e.g., Massengill v. S.M.A.R.T., 996 P.2d 1132, 1133, 1136 (Wyo. 2000) (stating that services offered by personal training facility "did not affect the public interest nor could they be considered as necessary or essential"); Seigneur v. National Fitness, 752 A.2d 631, 640 (Md. Ct. Spec. App. 2000) (stating that "[t]he services offered by a health club are not of great importance or of practical necessity to the public as a whole"); Shields v. Sta-Fit, Inc., 903 P.2d 525, 528 (Wash. Ct. App. 1995) (stating that, although "[m]embership in a health club is certainly beneficial . . . that is a far cry from declaring health clubs an indispensable necessity as a matter of public policy"). Nor is using a private gym compulsory. See Marquay, 139 N.H. at 717; Dupont v. Aavid Thermal Technologies, 147 N.H. 706, 710-11 (2002) (distinguishing Marquay, and finding no special relationship between employers and employees because employment is not compulsory, and employers, unlike schools, do not act as parental proxies). Therefore, because use of a private gym is neither a necessity nor a service of great importance to the public, and since it is undisputed that Planet Fitness is not "a common carrier, innkeeper or public utility, or . . . otherwise charged with a duty of public service," McGrath, 158 N.H. at 544 (quotation omitted), we conclude that no special relationship exists between Ladue and Planet Fitness that would cause the liability release to be prohibited as against public policy.

Next, Ladue argues that the release violates public policy because it undermines public safety. This argument has two parts. First, Ladue asserts that, because she was not actually exercising at the time of her injury, her injury is not related to her use of the fitness center. She contends that she "was merely walking on the uneven floor when she fell," and that her injury could have occurred in any business setting. She then argues that, because her injury is not directly connected to her use of the fitness center, this case implicates the broader issue of whether a business that is open to the public may absolve itself from responsibility for maintaining its premises in a

reasonably safe condition. Ladue asserts that public policy, as reflected in New Hampshire case law, prohibits a business that is open to the public from insulating itself from liability for negligence in maintaining its premises. For several reasons, we disagree.

First, we reject the premise of Ladue's argument regarding public safety: that, because she was not actually exercising at the time of her accident, her injury is not connected to her use of the gym. In fact, Ladue's injury is more related to her use of the fitness center than she suggests because, contrary to her assertion, she was not "merely walking" when she fell. Rather, as she acknowledged in an affidavit submitted to the trial court, when Ladue fell, she was walking toward a trash bin to dispose of a towel that she had just used to clean the treadmill on which she had exercised. Simply put, at the time of her injury, Ladue was finishing the process of using the treadmill. Her injury, therefore, was actually connected to her use of the gym. We note that numerous courts have concluded that, even if an injury occurs while a gym member is not actually exercising, an exculpatory agreement does not violate public policy. See Toro v. Fitness Intern. LLC, 150 A.3d 968, 971, 973-74 (Pa. Super. Ct. 2016) (finding that exculpatory agreement did not violate public policy, where gym member alleged that he slipped and fell on an "unusual buildup" of "soapy water" in gym locker room); Benedek v. PLC Santa Monica, LLC, 129 Cal. Rptr. 2d 197, 200-01, 204 (Ct. App. 2002) (finding that exculpatory agreement did not violate public policy, where gym member was injured after television mounted above an exercise machine slid off its base when member tried to adjust the television); Owen v. Vic Tanny's Enters., 199 N.E.2d 280, 281-82 (Ill. App. Ct. 1964) (ruling that exculpatory agreement did not violate public policy, where member of exercise facility slipped and fell while leaving facility's swimming pool).

Second, even if we were to accept the factual premise of Ladue's public safety argument — that her injury is not connected to her use of the fitness center — we would still not be persuaded. New Hampshire case law does not, as Ladue contends, categorically prohibit a business that is open to the public from insulating itself from liability for negligence in maintaining its premises. In arguing to the contrary, Ladue relies on Valenti v. NET Properties Management, 142 N.H. 633 (1998), Tanguay v. Marston, 127 N.H. 572 (1986), and Papakalos v. Shaka, 91 N.H. 265 (1941). However, that reliance is misplaced. In Papakalos, a tenant was injured while descending the stairs in his apartment building. See Papakalos, 91 N.H. at 265. The tenant brought a claim against his landlord, alleging that the landlord had been negligent in maintaining the stairs. See id. The landlord argued that he was insulated from liability because, in consideration for reduced rent, the tenant had agreed to absolve him of liability for injuries caused by the apartment's poor condition. See id. at 266. Notably, there was "no evidence of any explicit [exculpatory] agreement" between the parties. Id. at 267. We observed, in dicta, that, even if

5

there had been such an agreement, it would have been unenforceable because of "our rule that one may not by contract relieve himself from the consequences of the future nonperformance of his common-law duty to exercise ordinary care." Id. at 268.

Notwithstanding this unqualified language, the categorical prohibition on exculpatory agreements alluded to in Papakalos is not the law today. See McGrath, 158 N.H. at 541, 543-45 (ruling that exculpatory agreement did not violate public policy, where snowboarder at ski facility was injured in a collision with a snowmobile driven by a facility employee); Barnes, 128 N.H. at 105-06, 108 (ruling that exculpatory agreement did not violate public policy, where go-kart racer was injured at racing facility when he collided with a disabled kart during a practice lap). Today, Papakalos stands for the narrow proposition that exculpatory agreements pertaining to premises liability are prohibited in the context of rental housing because the landlord-tenant relationship is, itself, a special relationship. Cf. Kline v. Burns, 111 N.H. 87, 92-93 (1971) (establishing an implied warranty of habitability in every residential lease on the basis of public policy). Indeed, in Tanguay, we explained that when "the parties to a contract are free to make their own bargain, and no special relationship (such as landlord-tenant or common carrier-passenger) exists between them, a clause fully exculpating one party for property damage due to its negligence in the performance of a contract is valid and will be enforced." Tanguay, 127 N.H. at 577. Here, in contrast to Papakalos, no special relationship exists.

To the extent that Ladue cites Tanguay for the broad proposition that a business that is open to the public may not insulate itself from premises liability, that case is inapposite, as it addresses the question of whether an exculpatory clause in a commercial lease is enforceable against a nonparty to the lease. See id. at 578. Here, Ladue is a party to the liability release.

Nor does Valenti address the enforceability of an exculpatory agreement between a business and its customer. See Valenti, 142 N.H. at 634-36. Rather, it involves an issue not relevant here: whether the possessor of a business premise who hires an independent contractor to maintain the property may be vicariously liable for the contractor's negligence. See id.

Finally, Ladue argues that the liability release violates public policy because it relieved Planet Fitness of liability for negligently failing to comply with applicable building codes. See RSA ch. 155-A (2014 & Supp. 2019); RSA 674:51 (2016). We disagree, because, as we explained in McGrath, "[t]he fact that an exculpatory agreement waives the right to bring a negligence action arising out of an activity that is regulated by statute is not determinative of a public policy violation." McGrath, 158 N.H. at 543. In McGrath, although the plaintiff argued that the release violated public policy because it relieved the

defendant from complying with state safety laws pertaining to snowmobile operation, we reasoned that the release did not violate public policy because "[t]he plaintiff's waiver of negligence claims . . . ha[d] no effect upon the enforcement of the statute." Id. We observed that, irrespective of the liability release, the State was charged with enforcing the statute, and therefore "the interests of the public [were] protected by the State's ability to enforce the statute." Id. Here, as in McGrath, irrespective of the liability release, the interests of the public are adequately protected because towns and cities have the authority to enforce the state building code and local regulations pertaining to the construction and maintenance of buildings. See RSA 155-A:7 (2014); RSA 674:51. This enforcement authority includes the authority to assess fines and seek injunctive relief. See RSA 155-A:8 (2014); RSA 676:15, :17 (2016). Accordingly, for the reasons set forth above, we conclude that the liability release in the membership agreement signed by Ladue does not violate public policy.

Having determined that the release does not violate public policy, we now turn to the issue of whether Ladue's claim falls within the scope of the release. See McGrath, 158 N.H. at 545; Barnes, 128 N.H. at 109. Ladue argues that, even if the release is not prohibited as against public policy, it is unenforceable because a reasonable person would not understand it to shield Planet Fitness from liability for the particular injury that she suffered. We disagree.

To determine the scope of a liability release, we examine its language. Dean v. MacDonald, 147 N.H. 263, 267 (2001). "In interpreting a release, we give the language used by the parties its common meaning and give the contract itself the meaning that would be attached to it by a reasonable person." McGrath, 158 N.H. at 545 (quotation omitted). The terms of a liability release "are strictly construed against the defendant." Barnes, 128 N.H. at 107. However, "[a]s long as the language of the release clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence, the agreement will be upheld." McGrath, 158 N.H. at 545 (quotation omitted).

Ladue argues that a reasonable person would understand the release to be of limited scope, releasing Planet Fitness from liability only for injuries sustained while actually using exercise equipment or participating in exercise programs. Observing that the release does not specifically release Planet Fitness for claims arising out of maintenance of the premises, she argues that a reasonable person would not understand the agreement to release Planet Fitness from liability for a "slip and fall" injury suffered while walking through the facility. However, "the parties need not have contemplated the precise occurrence that caused the plaintiff's injuries," Dean, 147 N.H. at 267, and they "may adopt language to cover a broad range of accidents by specifying injuries involving negligence on the part of the defendants," id. (quotation and

7

ellipsis omitted).  Accordingly, the language of the release need not refer to the precise injury that actually occurred in order for the defendant to be released from liability.  See McGrath, 158 N.H. at 542, 545-46 (ruling that exculpatory agreement releasing ski facility from "any and all liability for personal injury or property damage which results in any way from negligence" applied when snowboarder was injured in a collision with a snowmobile driven by a facility employee (quotation omitted)); Dean, 147 N.H. at 266-68 (ruling that exculpatory agreement releasing racing facility from liability "for any and all loss or damage . . . caused by the negligence of the [facility]" applied when plaintiff signed release in order to enter pit area at race track, and was subsequently struck by race car while crossing the track (quotation omitted)).

Here, the release is extremely broad: it states that "Planet Fitness . . . will not be liable for any injury . . . resulting from the negligent conduct or omission of Planet Fitness, PF Corporate, or anyone acting on their behalf, whether related to exercise or not."  (Emphases added.)  Nevertheless, Ladue argues that the scope of the release is narrowed by the fact that she explicitly "accept[s] full responsibility" for the risk of injuries "arising out of or related to [her] use . . . of the facilities including, without limitation, exercise equipment, tanning, massage beds/chairs, and participation in . . . exercise programs or use of other services, equipment and/or programs offered to members."  Relying on Wright v. Loon Mt. Recreation Corp., Ladue contends that this language would cause a reasonable person to interpret the release as releasing Planet Fitness from liability only for injuries suffered while actually using exercise equipment or participating in exercise programs.  We disagree.

Ladue's reliance on Wright is misplaced.  In that case, a horseback rider at an equestrian center was injured when she was kicked by her guide's horse during a riding tour.  See Wright, 140 N.H. at 167-68.  We held that the rider's negligence claim against the center was not barred by the liability release that she had signed before the tour.  See id. at 167-68, 170-71.  We focused on the language of the release, which detailed the risks involved with horseback riding, including the risks related to the selection of the rider's horse and the "use of this animal."  Wright, 140 N.H. at 171 (quotation omitted); see also McGrath, 158 N.H. at 546-47 (recounting the language of the release and explaining our decision in Wright).  The release further stated that the center would be released "FROM ANY AND ALL LIABILITY FOR DAMAGES AND PERSONAL INJURY . . . RESULTING FROM THE NEGLIGENCE OF LOON MOUNTAIN RECREATION CORPORATION TO INCLUDE NEGLIGENCE IN SELECTION, ADJUSTMENT OR ANY MAINTENANCE OF ANY HORSE."  Wright, 140 N.H. at 168 (emphasis added).  We concluded that the release was "less than clear" as to whether it insulated the center from liability for injuries specifically caused by the behavior of a guide's horse because "[t]he paragraphs preceding the exculpatory clause emphasize[d] the inherent hazards of horseback riding."  Id. at 170.  "Because the exculpatory clause [was] prefaced

by the term 'therefore,' a reasonable person might [have] underst[ood] its language to relate to the inherent dangers of horseback riding and liability for injuries that occur for that reason." Id. (quotation omitted). We found that the exculpatory clause was "further clouded by the qualifying language that follow[ed]," id., and ultimately concluded that the contract "lack[ed] a straightforward statement of the defendant's intent to avoid liability for its failure to use reasonable care in any way," id. at 171-72 (emphasis added).

Here, in contrast to Wright, the release is not "obscured by qualifying terms and phrases." Id. at 171. The exculpatory agreement provides that Planet Fitness shall be released from liability for "any injury" caused by its negligence, "whether related to exercise or not," unambiguously insulating Planet Fitness from liability for all injuries involving negligence on the part of the gym. Accordingly, we conclude "that a reasonable person would have contemplated that the agreement[] released the defendant[] from any negligence," not just from negligence inherent in the active use of exercise equipment or active participation in exercise programs. McGrath, 158 N.H. at 547.

In sum, because we have found that the liability release in the membership agreement signed by Ladue does not violate public policy, and that a reasonable person would understand the release to shield Planet Fitness from liability for the particular injury that she suffered, we conclude, as the trial court did, that Ladue's negligence claim is barred by the release. Accordingly, we affirm the trial court's entry of summary judgment.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

9